Joel R. Hogue, SBN 09809720
John Massouh, SBN 24026866
SPROUSE SHRADER SMITH PLLC
701 S. Taylor, Suite 500
P.O. Box 15008
Amarillo, Texas  79105-5008
(806) 468-3300; (806) 373-3454 FAX

*Attorneys for FirstCapital Bank of Texas, N.A.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **REAGOR-DYKES MOTORS, LP et al** | § | **Case No. 18-50214-rlj-11** |
| | § | **Jointly Administered** |
| Debtors | § | |

| | | |
|---|---|---|
| **REAGOR AUTO MALL LTD.;** | § | |
| **REAGOR-DYKES AMARILLO, LP;** | § | |
| **REAGOR-DYKES FLOYDADA, LP;** | § | |
| **REAGOR-DYKES IMPORTS, LP;** | § | |
| **REAGOR-DYKES AUTO COMPANY,** | § | |
| **LP; REAGOR-DYKES PLAINVIEW,** | § | |
| **LP; REAGOR-DYKES MOTORS,** | § | |
| **LP; and REAGOR-DYKES SNYDER, LP,** | § | |
| Plaintiffs | § | |
| | § | |
| **V.** | § | **Adversary No. 20-05002-rlj** |
| | § | |
| **FIRSTCAPITAL BANK OF TEXAS,** | § | |
| **N.A.,** | § | |
| Defendant | § | |

## FIRSTCAPITAL BANK OF TEXAS, N.A.'S
## BRIEF IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. III

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENTS AND AUTHORITIES ................................................................. 3

    A.    Legal Standard on Motions to Dismiss ......................................................... 3

    B.    Preferential Transfer Claims (Count 1) and Fraudulent Transfer Claims (Count 2) Must be Dismissed. ...................................................................................... 4

        1.    Legal Deficiencies Applicable to Both the Alleged Transfers. .......................... 4

            a.    There Were No Transfers to FirstCapital. ................................................. 4

            b.    Accounts at FirstCapital were Mere Conduits. .......................................... 6

            c.    Reagor Dykes Failed to Identify the Specifics of the Alleged Transfers. 10

        2.    Preferential Transfer Claims are not Sufficiently Pled. ................................... 11

            a.    Transfer of a Debtors' Interest ................................................................ 12

            b.    To or For the Benefit of a Creditor ......................................................... 12

            c.    On the Account of Antecedent Debt ....................................................... 13

            d.    Debtor was Insolvent .............................................................................. 13

            e.    Made within Preference Period ............................................................... 14

            f.    Creditor Received More Than it Would Have in Chapter 7 ..................... 14

        3.    Fraudulent Transfer Claims are not Sufficiently Pled. ..................................... 15

    C.    Because the Preferential and Fraudulent Transfer Claims Must be Dismissed, there is no Basis for Recovery under Section 550 (Count 3) or Section 502 (Count 5) ......... 19

    D.    Equitable Subordination Claim (Count 4) Must be Dismissed. ................................ 19

        1.    Equitable Subordination Fails for Lack of Subject Matter Jurisdiction. .......... 19

        2.    Regardless, Reagor Dykes Failed to Plead Equitable Subordination Sufficiently. ...................................................................................................... 21

        3.    Equitable Subordination Claim is also Precluded by the *In Pari Delicto* Doctrine. .................................................................................................... 22

    E.    Willful Violation of Automatic Stay Claim (Count 6) Must be Dismissed. .............. 23

    F.    No Basis Exists for the Recovery of Attorney's Fees (Count 7) and it Must be Dismissed. ............................................................................................................. 24

III.   CONCLUSION .................................................................................................. 25

CERTIFICATE OF SERVICE ......................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467 (7th Cir. 1999) .............................................. 16

*Angell v. BER Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737 (Bankr. E.D.N.C. 2009) ......... 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 3

*Barber v. Union Nat'l Bank (In re KZK Livestock)*, 190 B.R. 626 (Bankr. C.D. Ill. 1996) .......... 18

*Bass v. Stryker Corp.*, 669 F.3d 501 (5th Cir. 2012) ..................................................................... 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................... 3

*Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692 (5th Cir. 1977). ........................... 21

*Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988). ....... 8

*Brandt v. PlainsCapital Leasing, LLC (In re Equip. Acquisition Res., Inc.),* 483 B.R. 823 (Bankr.
   N.D. Ill. 2012). .................................................................................................................. 17

*Brickley v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815 (W.D. Tex. 2017). ............ 21

*Christy v. Alexander & Alexander, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg,
   Manley, Myerson & Casey)*, 130 F.3d 52 (2d Cir. 1997) ........................................................... 7

*Citizens' Nat. Bank of Gastonia, N.C. v. Lineberger*, 45 F.2d 522 (4th Cir. 1930) ...................... 9

*Crescent Res. Litig. Tr. v. Nexen Pruet, LLC (In re Crescent Res., LLC)*,
   Nos. 09-11507-CAG, 11-01082- CAG, 2012 Bankr. LEXIS 287 (Bankr. W.D. Tex. 2012)... 11

*Elway Co. v. Miller (In re Elrod Holdings Corp.),* 392 B.R. 110 (Bankr. D. Del. 2008) ............ 20

*Feltman v. Keybank (In re Levitt & Sons, Ltd. Liab. Co.),* Nos. 07-19845-BKC-RBR, 09-2273-
   BKC-RBR-A, 2010 Bankr. LEXIS 1284 (Bankr. S.D. Fla. 2010) ........................................... 13

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ........................................................... 3

*Furr v. TD Bank, N.A. (In re Rollaguard Sec., LLC)*, 591 B.R. 895 (Bankr. S.D. Fla. 2018) ........ 9

*Herkner v. Argo-Tech Corp. Costa Mesa*, No. H-06-2491, 2008 U.S. Dist. LEXIS 55164, 2008
   WL 2838115 (S.D. Tex. July 21, 2008) ............................................................................... 25

*Hill v. Oria (In re Juliet Homes, LP)*, No. 09-03429, 2011 Bankr. LEXIS 5116, (Bankr. S.D.
   Tex. 2011) ......................................................................................................................... 11

*Holt v. Federal Deposit Insurance Corp. (In re CTS Truss, Inc.)*, 868 F.2d 146 (5th Cir. 1989). 21

*In re Baker & Getty Financial Services, Inc.*, 974 F.2d 712 (6th Cir. 1992) ................................. 7

*In re Bullion Reserve of North America*, 922 F.2d 544 (9th Cir. 1991) .................................... 7, 8

*In re Columbia Data Products, Inc.*, 892 F.2d 26 (4th Cir. 1989) .................................................. 7

*In re Fabricators, Inc.*, 926 F.2d 1458 (5th Cir. 1991)................................................................. 21

*In re Herby's Foods*, 134 B.R. 207 (Bankr. N.D. Tex. 1991)....................................................... 21

*In re Hooker Investments, Inc.*, 155 B.R. 332 (S.D. N.Y. 1993) ..................................................... 7

*In re Lockwood,* 14 Bankr. 374 (Bankr. E.D. N.Y. 1981) ........................................................ 20

*In re Perry*, 336 F. Supp. 420, 425 (D.S.C. 1972).............................................................. 9

*In re Prescott*, 805 F.2d 719 (7th Cir. 1986) ........................................................................ 9

*In re Tonyan Constr. Co.*, 28 B.R. 714, 728-29 (Bankr. N.D. Ill. 1983)........................................ 9

*In re Verestar, Inc.*, 343 B.R. 444 (Bankr. S.D.N.Y. 2006). ........................................................ 16

*In re Vitreous Steel Prods. Co.*, 911 F.2d 1223 (7th Cir. 1990) .................................................... 20

*Ivey v. First Citizens Bank & Tr. Co. (In re Whitley)*, 848 F.3d 205, 209-10 (4th Cir. 2017)........ 9

*Katz v. First Nat'l Bank of Glen Head*, 568 F.2d 964 (2d Cir. 1977) ........................................... 9

*Lone Star Bank of W. Tex. v. Rabo Agrifinance, LLC (In re Waggoner Cattle, LLC)*, Nos. 18-
    20126-RLJ-11, 18-02007, 2019 Bankr. LEXIS 339 (Bankr. N.D. Tex. 2019)........................ 20

*Milligan v. Salamone (In re Westech Capital Corp.)*, Nos. 16-10300-TMD, 16-01078-TMD,
    2018 Bankr. LEXIS 969 (Bankr. W.D. Tex. 2018) ................................................................. 23

*Official Comm. of Unsecured Creditors AppliedTheory Corp. v. Halifax Fund, L.P. (In re
    AppliedTheory Corp.),* 493 F.3d 82, 85–86 (2d Cir. 2007)....................................................... 20

*Official Comm. Of Unsecured Creditors of Grand Eagle Cos. v. ASEA Brown Boveri, Inc.,* 313
    B.R. 219 (N.D. Ohio 2004) ................................................................................................. 20

*Paradigm Air Carriers, Inc. v. Tex. Rangers Baseball Partners (In re Tex. Rangers Baseball
    Partners)*, 498 B.R. 679 (Bankr. N.D. Tex. 2013)................................................................ 17

*Peterson v. Ritchie Capital Mgmt., LLC (In re Lancelot Investors Fund L.P.),* 2012 Bankr.
    LEXIS 1007, (Bankr. N.D. Ill. Mar. 2, 2012) ....................................................................... 19

*Ratcliff v. Rainwater*, 93 Fed. Appx. 623 (5th Cir. 2004)............................................................. 22

*Reed v. CareCentric Nat'l, LLC (In re Soporex, Inc.)*, 446 B.R. 750 (Bankr. N.D. Tex. 2011)... 25

*Reed v. Walton (In re BFN Operations LLC)*, 607 B.R. 551 (Bankr. N.D. Tex. 2018) ............... 11

*Sec. First Nat'l Bank v. Brunson (In re Coutee)*, 984 F.2d 138 (5th Cir. 1993) ....................... 7, 8

*Soza v. Hill (In re Soza),* 542 F.3d 1060 (5th Cir. 2008)............................................................ 16

*Trone v. Smith (In re Westgate-California Corp.)*, 642 F.2d 1174 (9th Cir. 1981)..................... 21

*Tuchman v. DSC Communications Corp.*, 14 F.3d 1061 (5th Cir. 1994)..................................... 16

iv

*U.S. Express Lines, Ltd v. Higgins*, 281 F.3d 383 (3d Cir. 2002)..................................................... 3

*United States ex rel. King v. Alcon Labs*., 232 F.R.D. 568 (N.D. Tex. 2005).............................. 18

*Valley Media v. Borders (in re Valley Media, Inc.)*, 288 B.R. 189 (Bankr. D. Del. 2003) .......... 10

*Weeks v. Kinslow (In re Weeks),* 28 B.R. 958 (Bankr. W.D. Okla. 1983).................................... 20

*Wiand v. Wells Fargo Bank, N.A*., 86 F. Supp.3d 1316, 1327-29 (M.D. Fla. 2015) ..................... 9

## Statutes

11 U.S.C. § 1 ................................................................................................................................ 4

11 U.S.C. § 101 ............................................................................................................................ 5

11 U.S.C. § 362 ............................................................................................................................ 24

11 U.S.C. § 547 ............................................................................................................................ 11

11 U.S.C. § 548 ............................................................................................................................ 15

11 U.S.C. § 550 ............................................................................................................................ 19

Fed. R. Bankr. P. 7009. ............................................................................................................... 15

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 3

Fed. R. Civ. P. 9(b). .................................................................................................................... 15

## Other Authority

5 Collier on Bankruptcy, ¶ 547 (15th Ed. Rev.) ...................................................................14

5 Collier on Bankruptcy, ¶ 548 (15th Ed. Rev.) ...................................................................15

5 Collier on Bankruptcy, ¶ 510 (16th Ed.)............................................................................20

Defendant FirstCapital Bank of Texas, N.A. ("**FirstCapital**") files this brief in support of its Motion to Dismiss and shows as follows:

## I.    INTRODUCTION

1.    Reagor Dykes,[1] through its chief financial officer and other employees, fourteen of whom have pled guilty to various financial crimes, committed a multi-million dollar fraud on behalf of Reagor Dykes throughout the Texas Panhandle and beyond.  Reagor Dykes, which continues to operate as the debtor-in-possession in the underlying bankruptcy, now sues to avoid unspecified transfers and recover unspecified damages from FirstCapital, one of the creditors who suffered a loss as a victim of the Reagor Dykes fraud.

2.     In the process, Reagor Dykes drags FirstCapital, and its respected CEO, through the mud with accusations of collaboration with Reagor Dykes in its fraudulent schemes.[2]  Citing snippets of "evidence," without telling the full or accurate story, Reagor Dykes paints a picture of a complicit FirstCapital, when the reality is that the Reagor Dykes fraud was so massive and widespread it was impossible for anyone other than Reagor Dykes' CFO, its accounting department, and other guilty Reagor Dykes' employees to know what was going on.

3.    Still, on a motion to dismiss, FirstCapital must accept the allegations pled by Reagor Dykes, incomplete as they are, as true for purposes of the motion.  What becomes apparent, though, is that most of what is pled in the factual background section of the Complaint has little to do with the claims actually asserted.

4.    Four of the claims brought by Reagor Dykes are to set aside "transfers"[3] in which FirstCapital's only role was unknowingly providing the account "conduit" through which

---

[1] For ease of reference, the Plaintiffs to this suit will be referred to collectively as "Reagor Dykes" or "Plaintiffs."

[2] See Doc. No. 1725, ¶16.

[3] Doc. No. 1725, Count 1 (Preferential Transfers), Count 2 (Fraudulent Transfers), Count 3 (Avoidance of Transfers), and Count 5 (Disallowance of Claims).

fraudulent transactions between different Reagor Dykes accounts occurred.  As a matter of law, there was no transfer to or for the benefit of FirstCapital, and neither does its conduit role give rise to any liability.  FirstCapital was the mere unwitting tool of Reagor Dykes' well-documented check kiting scheme involving valueless exchanges among Reagor Dykes entities.

5.      Beyond those deficiencies, Reagor Dykes' transfer claims fail because they are not pled with the kind of particularity required by the Federal Rules of Civil Procedure, as applied in bankruptcy adversary proceedings.  Reagor Dykes instead seeks to avoid and recover transfers that are not identified by date, amount, or the entities to which they relate.  Reagor Dykes points generally to four types of banking transactions, without specifics, that are allegedly subject to avoidance under various provisions of the Bankruptcy Code.  These are bare conclusory allegations unsupported by fact or specificity and are subject to dismissal.  Reagor Dykes has had significant time to determine with particularity whether any legitimate transfer claims exist against FirstCapital, but did not plead any.

6.      The other claims, while a bit more scattershot, cannot survive a motion to dismiss either.  Through Count 4, Reagor Dykes seeks to subordinate FirstCapital's claims in the bankruptcy to the claims of all creditors, but they ignore or are unaware of the fact that a debtor-in-possession has no standing to assert claims of equitable subordination.  Beyond that, the doctrine of *in pari delicto* would preclude the equitable subordination claim because of the admitted illegal conduct of the Reagor Dykes employees who committed fraud on behalf of, and in furtherance of, the Reagor Dykes criminal enterprise.  Through Count 6, Reagor Dykes argues that FirstCapital's failure to release cash proceeds deposited after the bankruptcy filings constitutes a violation of the automatic stay, yet the placement of an administrative freeze on a bankrupt party's account does not violate the automatic stay as a matter of law.  Finally, Count 7 is styled

as a claim for attorney's fees, but Reagor Dykes has pled no basis for the recovery of attorney's fees for the reason that there is no basis.

7.      Accordingly, all the claims brought by Reagor Dykes fail as a matter of law and should be dismissed

## II.    ARGUMENTS AND AUTHORITIES

### A.    Legal Standard on Motions to Dismiss

8.      A complaint may be dismissed for "failure to state a claim upon which relief can be granted."[4]   In deciding a motion to dismiss under Rule 12(b)(6), a court must treat the facts alleged in the complaint as true, construe the complaint in the light most favorable to the non-moving party, draw all reasonable inferences in favor of the non-moving party, and ask whether under any reasonable reading of the complaint, the non-moving party may be entitled to relief.[5] When reviewing the complaint, a court must also consider any, "document integral or explicitly relied on in the complaint."[6]   In order to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[7] But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[8]   Although a complaint need only consist of a, "short and plain statement of the claim showing that the pleader is entitled to relief," it must include, "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[9]   When considering a motion to dismiss under Rule 12(b)(6), the court must conduct a two-step process to determine whether relief should be granted.

---

[4] FED. R. CIV. P. 12(b)(6).
[5] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).
[6] *U.S. Express Lines, Ltd v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citations omitted).
[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[8] *Id.*
[9] *Id.* (quoting *Twombly*, 550 U.S. at 555).

9.      First, the court must separate factual and legal issues, then it must disregard legal conclusions while assuming that well pleaded factual allegations are true.[10]  Second, examining the factual allegations alone, the court must then determine whether those allegations give rise to a plausible claim for relief.[11]  "Mere recitation of the elements of a claim is insufficient to survive a Rule 12(b)(6) motion to dismiss."[12]  In the Fifth Circuit, "[d]ismissal is appropriate when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise his right to relief above the speculative level."[13]  Reagor Dykes has failed to raise its right to relief on all seven counts alleged in the Complaint above the "speculative level."

## B.    Preferential Transfer Claims (Count 1) and Fraudulent Transfer Claims (Count 2) Must be Dismissed.

10.      Counts 1 and 2 address various types of alleged transfers. FirstCapital will first address the alleged "transfers" as a whole and how they are not actionable against FirstCapital and then will address the numerous pleading deficiencies with respect to Count 1 and Count 2 separately.  Analyzing the arguments together, Counts 1 and 2 should be dismissed.

### 1.    Legal Deficiencies Applicable to Both the Alleged Transfers.

#### a.    There Were No Transfers to FirstCapital.

11.      At their threshold, claims under Sections 547 and 548(a)(1)[14] of the Bankruptcy Code[15] must challenge an actual transfer within the meaning of Section 101(54).  Section 101(54) of the Code defines a "transfer" as:

> (A) the creation of a lien;
> (B) the retention of title as a security interest;
> (C) the foreclosure of a debtor's equity of redemption; or

---

[10] *Fowler*, 578 F.3d at 210-11 (citing *Iqbal*, 556 U.S. at 678).
[11] *Id*. at 211 (citing *Iqbal*, 556 U.S. at 679).
[12] *Twombly*, 550 U.S. at 555.
[13] *Bass v. Stryker Corp*., 669 F.3d 501, 506 (5th Cir. 2012).
[14] Throughout this Brief, FristCapital makes references to certain Section numbers. Unless otherwise noted, references to Sections refer to sections of the Bankruptcy Code.
[15] 11 U.S.C. § 1 *et seq.*, hereafter referred to as the "Code."

> (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—
> > (i) property; or
> > (ii) an interest in property.[16]

12.    Reagor Dykes asserts four counts pertaining to alleged transfers that it believes should be avoided and funds brought back into the Reagor Dykes bankruptcy estate.  The four counts pertain to alleged preferential transfers under Section 547 of the Code (Count 1), alleged fraudulent transfers under Section 548 of the Code (Count 2), recovery of avoided transfers under Section 550 of the Code (Count 3), and disallowance of claims until FirstCapital repays the alleged transfers (Count 5).

13.    Central to all four of those counts is whether a transfer occurred within the meaning of the preferential and fraudulent transfer statutes.  Related to that question is whether FirstCapital, as a creditor of Reagor Dykes, was the beneficiary of any transfers, or whether it was the mere conduit through which Reagor Dykes made transfers between Reagor Dykes and third-parties or to other Reagor Dykes entities.  If FirstCapital served as a mere pass-through (as is the case here), no basis for liability exists and the claims must be dismissed.

14.    As will be addressed later, Reagor Dykes' transfer allegations are vague, unspecified, and lack the required particularity to form the basis of a claim, thereby not satisfying the required pleading standards; but what they do say in their Complaint regarding transfers is summarized as follows:

- Alleging in paragraph 16 that Reagor Dykes engaged in a massive transfer of funds between Reagor Dykes accounts.

- Alleging in paragraph 24 that debits and credits were nothing more than transfers between Reagor-Dykes entities.

---

[16] 11 U.S.C. § 101(54).

- Alleging in paragraph 25 that Reagor Dykes was just churning funds between Reagor Dykes entities.

- Alleging in paragraph 26 that deposits would come from other Reagor-Dykes checking accounts or sight drafts for cars purportedly being sold from one Reagor Dykes entity to another.

- Alleging in paragraph 27 that deposits were largely from other Reagor Dykes entities.

- Alleging in paragraph 33 that sight drafts were between various Reagor Dykes dealerships.

- Alleging in paragraph 39 that Reagor Dykes was using drafts for cars purportedly being sold from one Reagor Dykes entity to another.

15.     Based on these vague, non-specific allegations of transfers between one Reagor Dykes entity and another Reagor Dykes entity, Reagor Dykes conclusively alleges (without alleging sufficient facts to support such conclusions) that FirstCapital benefited from preferential transfers and fraudulent transfers that should be avoided under Section 550.  Yet, Reagor Dykes alleged nothing to demonstrate that FirstCapital took on any role other than as an unknowing conduit through which two fraud-feasing Reagor Dykes entities conducted their illegal business with one another.  In fact, the allegations as alleged, and identified above, actually support the fact that FirstCapital was a mere conduit and was not the beneficiary of any of the alleged "transfers."

b.   <u>Accounts at FirstCapital were Mere Conduits.</u>

16.     Parties that act as mere conduits and simply facilitate the transfer of funds or property from the debtor to a third party (or, in this case another Reagor Dykes entity) generally are not deemed initial transferees for purposes of the transfer avoidance provisions of Section

550.[17]  The Code does not provide a definition of "initial transferee" but the majority of the federal

circuits have used a, "dominion or control test to determine whether a party is an initial

transferee."[18] The term transferee does not include anyone who touches the money, and must mean

something different from "possessor" or "holder" or "agent."[19]  "Every court of appeals to consider

this issue has declined to find 'mere conduits' to be initial transferees."[20]  Consequently, in the

Fifth Circuit, "a party that receives a transfer from the debtor will not be considered the initial

transferee unless that party gains actual dominion or control over the funds."[21]  And, one who

holds funds "only for the purpose of fulfilling an instruction to make the funds available to

someone else" is not an initial transferee.[22]

17.     In *Bonded Fin. Servs. Inc. v. European American Bank*, 838 F.2d 890 (7th Cir.

1988), an insider of a debtor corporation caused the transfer of corporate funds to his personal

bank account, and then directed the bank to debit his account in that amount and apply the funds

to reduce the indebtedness to the bank of another entity he owned.[23]  The trustee in bankruptcy

sued to recover the funds from the bank.  The Seventh Circuit, applying the dominion and control

test, ruled that "the minimum requirement of status as a 'transferee' is dominion over the money

---

[17] *In re Hooker Investments, Inc.*, 155 B.R. 332 (S.D. N.Y. 1993).
[18] *Sec. First Nat'l Bank v. Brunson (In re Coutee)*, 984 F.2d 138, 141 (5th Cir. 1993) (citing *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988) (stating that, at minimum, a "transferee," as used in the Code, must have the right to use money for its own purposes); *In re Chase & Sanborn Corp.*, 848 F.2d 1196 (11th Cir. 1988) (finding that possession of funds does not equate to "control" of those funds); *In re Columbia Data Products, Inc.*, 892 F.2d 26 (4th Cir. 1989) (adopting the *Bonded* test, that a "transferee" must be able to use funds for its own purposes); *In re Bullion Reserve of North America*, 922 F.2d 544 (9th Cir. 1991) (holding that a party does not become a transferee unless and until he gained the beneficial interest of the funds); *In re Baker & Getty Financial Services, Inc.*, 974 F.2d 712 (6th Cir. 1992) (distinguishing the "dominion" test from the "purpose" test and adopting the "dominion" test).
[19] *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988).
[20] *Christy v. Alexander & Alexander, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 58 (2d Cir. 1997) (applying the mere conduit rule in granting summary judgment in favor of insurance broker).
[21] *Coutee*, 984 F.2d at 141 (citing *Bonded Fin. Servs.*, 838 F.2d at 893) (granting summary judgment and holding bank was a "subsequent transferee" and received funds from its debtor for value and without knowledge of the voidability of the initial transaction).
[22] *Id.* at 141.
[23] *Bonded Fin. Servs.*, 838 F.2d at 891.

or other asset, the right to put the money to one's own purposes."[24]  Noting that the bank "acted

as a financial intermediary," the court concluded:

> [t]he [b]ank had no dominion over the $200,000 until . . . [the insider] instructed
> the [b]ank to debit the account to reduce the loan; in the interim, so far as the [b]ank
> was concerned, [the insider] was free to invest the whole $200,000 in lottery tickets
> or uranium stocks.[25]

Other circuits have widely adopted the same logic.[26]  The law requires more than mere receipt to

impose liability as a transferee.[27]  A party is not liable simply because it served as a "mere conduit"

in the transaction.[28]

18.    Further analysis of the "dominion and control" test indicates courts rely heavily on

the relationships made between the parties.  In *Bonded Fin. Servs.*, the court further found that the

contractual relationship superseded any "control" that the bank might have had over the money,

as the instructions from the customer to the bank, required the bank to apply the funds to an

outstanding loan.[29]  Likewise, in *Security First National Bank v. Brunson (In re Coutee)*, 984 F.2d

138 (5th Cir. 1993), the court held that a law firm did not exercise control over the money because

the firm held the money in its trust account, and thus served as a fiduciary over the money and had

no "control."[30]  One who holds funds, "only for the purpose of fulfilling an instruction to make the

funds available to someone else" is not an initial transferee.[31]

---

[24] *Id.* at 893; *Coutee*, 984 F.2d at 141.
[25] *Id.* at 894.
[26] *See, e.g., In re Bullion Reserve of North America,* 922 F.2d 544 (9th Cir. 1991) (finding that where recipient of
money had contractual obligation to immediately transfer funds, he was not initial transferee even though the funds
were eventually spent for his benefit).
[27] *In re Finley*, 130 F.3d 52, 57 (2nd Cir. 1997).
[28] *Id.*
[29] *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988).
[30] *Coutee*, 984 F.2d at 141.
[31] *Id.*

19.     It also follows that, "there is no avoidable transfer when a debtor deposits its own funds to its own unrestricted bank account."[32] This line of cases recognizes that when a depositor places its own funds in an unrestricted bank account, the depositor is not truly disposing of or parting with the funds as contemplated by the definition of the term "transfer."[33] For all practical purposes, the depositor to a traditional demand deposit account retains complete autonomy over the funds, with the unfettered ability to withdraw them, transfer them to other accounts, use them to write checks, or use them to make wire or other electronic payments.[34] As is apparent from the Complaint, Reagor Dykes in fact withdrew, transferred, and paid out from their accounts with FirstCapital, in the end leaving the accounts in question empty or overdrawn. If there was any transfer at all in making the deposits, Reagor Dykes transferred funds to other Reagor Dykes entities. By making the deposits, Reagor Dykes did not dispose of or part with the funds, and so no avoidable transfers to FirstCapital took place because FirstCapital was not the actual recipient or transferee of any of the alleged transfers.[35]

---

[32] *Furr v. TD Bank, N.A. (In re Rollaguard Sec., LLC)*, 591 B.R. 895, 919-20 (Bankr. S.D. Fla. 2018) (dismissing all fraudulent transfer claims against debtors' financial institution); *see also In re Prescott*, 805 F.2d 719, 729 (7th Cir. 1986) ("Deposits into bank accounts clearly can be transfers under the new Bankruptcy Code. . . . However, . . . to the extent a deposit is made into an unrestricted checking account, in the regular course of business and withdrawable at the depositor's will, it is not avoidable by the trustee . . . .") (citing *Katz v. First Nat'l Bank of Glen Head*, 568 F.2d 964, 969 (2d Cir. 1977)); *Katz*, 568 F.2d at 969 ("It is well settled that deposits in an unrestricted checking account, made in the regular course of business, do not constitute transfers within the meaning of the Bankruptcy Act."); *In re Tonyan Constr. Co.*, 28 B.R. 714, 728-29 (Bankr. N.D. Ill. 1983) (stating that "[o]rdinarily, a deposit in an unrestricted checking account does not constitute a parting with property, because it '[] results in substituting for currency, bank notes, checks, drafts, and other bankable items a corresponding credit with the bank, which may be checked against'" (quoting  *Citizens' Nat. Bank of Gastonia, N.C. v. Lineberger*, 45 F.2d 522, 527 (4th Cir. 1930)); *In re Perry*, 336 F. Supp. 420, 425 (D.S.C. 1972) (finding that "deposits and subsequent set-offs are not transfers" because they "result in a substitution of credit for various forms of commercial paper or currency" and "are withdrawable at the will of the depositor"); *Ivey v. First Citizens Bank & Tr. Co. (In re Whitley)*, 848 F.3d 205, 209-10 (4th Cir. 2017).
[33] *Furr*, 591 B.R. at 908-09.
[34] *Whitley*, 848 F.3d at 209-10 (summarizing cases that hold bank deposits do not constitute transfers under section 101(54)).
[35] *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp.3d 1316, 1327-29 (M.D. Fla. 2015), aff'd, 677 F. App'x 573 (11th Cir. 2017) (holding that since the principal "was essentially transferring funds to and from himself, he (and the entities he controlled) never disposed of or parted with the 'assets' and therefore no transfers took place.").

20.     FirstCapital never had "control or dominion" over the funds passing through Reagor Dykes' unrestricted bank accounts.  Accordingly, FirstCapital was not a transferee of any of the alleged preferential or fraudulent transfers alleged in the Complaint.

c.   <u>Reagor Dykes Failed to Identify the Specifics of the Alleged Transfers.</u>

21.     Based upon the bare allegations in Reagor Dykes pleadings, the transactions here not only do not constitute "transfers" to FirstCapital (as fully set forth above) but, even if they do constitute actionable transfers, such alleged transfers are not properly identified sufficiently to allow FirstCapital to prepare a defense.[36]

22.     The seminal case addressing the pleading standard regarding the specifics of a "transfer" is *Valley Media*.[37]  There, the plaintiff alleged in its complaint that the defendant received preferential payments during the 90-day preference period in the amount of "not less than $624,627.18" and further alleged that such transfers were avoidable under Section 547.[38]  The defendant moved to dismiss the plaintiff's preference claims under Rule 12(b)(6).[39]  In granting the defendant's motion to dismiss, the court found that the complaint failed to provide fair notice to the defendant and lacked a sufficient showing of entitlement to relief as required under Rule 8(a)(2).[40]

23.     In addition, the court ruled that in order to overcome a 12(b)(6) motion to dismiss, a complaint to avoid a preferential transfer must include:

> (b) an identification of ***each*** alleged preference transfer by
> (i) date.
> (ii) name of debtor/transferor,
> (iii) name of transferee, and
> (iv) the amount of the transfer.[41]

---

[36] *Valley Media v. Borders (in re Valley Media, Inc.)*, 288 B.R. 189, 191 (Bankr. D. Del. 2003).
[37] *See id.*
[38] *Id.*
[39] *Id.*
[40] *Id.* at 192.
[41] *Id.*(emphasis added).

24.     Several other courts have applied the pleading standard articulated in *Valley Media*.[42]  While some courts have declined to follow *Valley Media*, those courts issued their opinions prior to the heightened pleading requirements established by *Iqbal* and *Twombly*.[43]  Consequently, under this analysis, one court found that an assertion that a debtor transferred its funds into bank accounts operated by the debtor's principals was merely a conclusory statement that lacked factual support.[44]  Reagor Dykes wholly fails to point to any specific transfer of funds, the related entity to which or from which the entity made the alleged transfer, the amount of the alleged transfer, or the date of the alleged transfer.  Accordingly, the Complaint does not allege the most basic information necessary to establish its claims.

**2.     Preferential Transfer Claims are not Sufficiently Pled.**

25.     To establish the existence of a preferential transfer under Section 547(b), Reagor Dykes must prove:

> (1) a transfer of an interest of the debtor in property; (2) to or for the benefit of a creditor;  (3) for or on account of antecedent debt; (4) made while the debtor was insolvent;  (5) made on or within 90 days before the date of the filing of the bankruptcy petition; and (6) that enabled the creditor to receive more than it would otherwise have received if the transfer had not been made and the case had proceeded under Chapter 7.[45]

Reagor Dykes' bare allegations regarding unspecified "transfers" is not sufficient to create liability.  Reagor Dykes must plead facts sufficient to show each element of the alleged transfers

---

[42] *Crescent Res. Litig. Tr. v. Nexen Pruet, LLC (In re Crescent Res., LLC)*, Nos. 09-11507-CAG, 11-01082- CAG, 2012 Bankr. LEXIS 287, at *21 (Bankr. W.D. Tex. 2012).

[43] *Id.* at *16 ("*Valley Media* has been distinguished or ignored by the majority of bankruptcy courts both nationwide as well as in Delaware," but nevertheless determined that "the Supreme Court in *Twombly* and *Iqbal* breathe new life into the pleading requirements implemented in *Valley Media* for § 547 preference claims.").

[44] *Angell v. BER Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737, 750 (Bankr. E.D.N.C. 2009).

[45] 11 U.S.C. § 547(b); *see Reed v. Walton (In re BFN Operations LLC)*, 607 B.R. 551, 559 (Bankr. N.D. Tex. 2018); *Hill v. Oria (In re Juliet Homes, LP)*, No. 09-03429, 2011 Bankr. LEXIS 5116 at *8-9 (Bankr. S.D. Tex. 2011); *Caremerica, Inc.*, 409 B.R. at 750.

(as well as the specifics of the transfers as set forth above), yet it failed to do so, warranting dismissal of the claims.

### a.   Transfer of a Debtors' Interest

26.     The Complaint fails to identify which of the debtors made the alleged transfers. As such, Reagor Dykes cannot show it is plausible that an interest of the debtor in property was transferred to FirstCapital. Reagor Dykes' conclusory allegations recite elements of a Section 547 preference claim, but the allegations are not accompanied by factual content supporting entitlement to relief. The Complaint alleges preferential transfers of "Deposit Sight Transfers," "Paid Sight Transfers," "True Overdraft Transfers," and "Bank Transfers," but lacks any information as to the dates, amounts, and number of transfers, or the parties who made the alleged transfers. The Complaint must contain information regarding the actual transaction to survive a motion to dismiss. Accordingly, because the Complaint wholly fails to plead with sufficient particularity which Debtor's interest was affected in the alleged transfers, as well as the specifics of the individual transfers complained of, the Court should dismiss Count 1.

### b.   To or For the Benefit of a Creditor

27.     Reagor Dykes further makes the conclusory statement in paragraph 59 that "RAM, Amarillo, and Floydada transferred funds to Defendant to pay the obligations (the "Deposited Sight Transfers") [that] were to or for the benefit of a creditor within the meaning of section 547(b)(1)," again without providing the required information about the dates and amounts of each transfers or which Debtors' "obligations" it refers to and thus, there is no way to determine who received or benefited from the transfer. Accordingly, because the Complaint wholly fails to plead this element with sufficient particularity, Count 1 must be dismissed.

c.  On the Account of Antecedent Debt

28.    Reagor Dykes fails to plead facts that would support the existence of any alleged preferential transfers that were for or on the account of an antecedent debt owed by the specific transferor to FirstCapital. Again, there are no specifics as to which entity transferred what or to what antecedent debt such alleged transfer was on account of. The Complaint simply speaks to various general categories of "transfers" without any facts or specifics to support the claims.

29.    Without factual assertions showing that it is plausible that the alleged transfers occurred, the Complaint fails to satisfy the plausibility standard for claims for relief. Here, Reagor Dykes makes the conclusory assertion that each preferential transfer was made "for, or on account of, an antecedent debt owed by the Debtor before the [] transfers were made."[46] Which Debtor? What antecedent debt? What specific transfer? In order to satisfy the pleading requirements, Reagor Dykes must allege facts regarding the nature and amount of the antecedent debt, which, if true, would render plausible the assertion that a transfer was made for or on account of such antecedent debt. This requirement includes specifying the total loan amounts or the nature of the underlying obligations for the obligated entities.[47] No such allegations exist, thereby necessitating the dismissal of Count 1.

d.  Debtor was Insolvent

30.    The avoidance of a preferential transfer is also contingent on the debtor being insolvent on the date of the transfer.[48] While the Code provides a presumption that a debtor is insolvent during the preference period preceding the date of the bankruptcy filing,[49] the Complaint must provide facts showing that the transfers did, in fact, occur during the preference period and

---

[46] Complaint at ¶ 60.
[47] *Feltman v. Keybank (In re Levitt & Sons, Ltd. Liab. Co.),* Nos. 07-19845-BKC-RBR, 09-2273-BKC-RBR-A, 2010 Bankr. LEXIS 1284 *3 (Bankr. S.D. Fla. 2010).
[48] 11 U.S.C. § 547 (b)(3).
[49] 11 U.S.C. § 547 (f).

that the debtor was in fact insolvent during that period.  Reagor Dykes fails to allege any of this required information and merely alleges in conclusory fashion that the "Plaintiffs were insolvent at all times" without any facts supporting this assertion.[50]

### e.  Made within Preference Period

31.    If the claimant alleges that the creditor receiving the benefit of the transfer was an insider, the transfer is avoidable if it occurred between ninety days and one year prior to the petition date.[51]  Here, Reagor Dykes conclusively asserts that the transfers were made within one year without identifying the specifics of the alleged transfers, including the dates of the alleged transfers.  The heightened pleading standard for claims for relief requires more than a conclusory assertion that transfers occurred within one year of the filing of bankruptcy.  Thus, Reagor Dykes must provide factual assertions showing that it is plausible the transfers occurred during the alleged one year preference period.  Reagor Dykes can only accomplish this by including the specific dates and amounts of each alleged transfer, and it failed to do so. This is just another reason why Count 1 should be dismissed.

### f.  Creditor Received More Than it Would Have in Chapter 7

32.    Under Section 547(b)(5), avoidance is also contingent on establishing that the alleged preferential transfer enabled the transferee to receive more than it would have under Chapter 7 of the Code.  "Section 547(b)(5) is a central element of the preference section because it requires a comparison between what the creditor actually received and what it would have received under [Chapter 7]."[52]  Here, Reagor Dykes makes no allegations regarding the value of what FirstCapital allegedly received.  Reagor Dykes presents no facts related to the value of

---

[50] *See* Complaint at ¶ 62.
[51] 11 U.S.C. § 547 (b)(4)(B).
[52] 5 COLLIER ON BANKRUPTCY, ¶ 547.03[7] (Alan N. Resnick & Henry J. Sommer, eds, 15th ed. rev.).

FirstCapital's collateral and liens.  It fails to allege what FirstCapital would have received if the case were one under Chapter 7 in order to complete the analysis. Reagor Dykes' failure to identify what FirstCapital received makes a comparison of what it would have received under Chapter 7 impossible, and necessitates dismissal of Count 1.

### 3.    Fraudulent Transfer Claims are not Sufficiently Pled.

33.    Through Count 2, the Complaint seeks to avoid alleged fraudulent transfers incurred under section 548(a)(1)(A) within the two-year period prior to the petition date of the debtors.  These claims also fail to meet the required pleading standards and the heightened pleading standards for fraud based claims.

34.    Section 548 of the Bankruptcy Code allows the trustee to avoid fraudulent transfers of an interest of the debtor in property incurred within two years before the date of the filing of the petition.[53] Section 548(a)(1)(A) claims are founded on actual fraud.[54] Thus, a transfer is avoidable as actually fraudulent if it "(i) had at its purpose an intent to hinder, delay or defraud the debtor's creditors."[55]  Reagor Dykes' fraudulent transfer claims must be dismissed for failure to plead sufficient facts to support a section 548(a)(1)(A)  claim for an actual fraudulent transfer.

35.    A claim to avoid a fraudulent transfer is only sufficient if it satisfies the heightened pleading standard for actual fraud provided in Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b), made applicable by Rule 7009 of the Federal Rules of Bankruptcy Procedure, requires a party alleging fraud to, "state with particularity the circumstances constituting fraud . . . ."[56] However, "malice, intent, knowledge, and other conditions of a person's mind may be alleged

---

[53] 11 U.S.C. § 548(a)(1).
[54] Id. § 548(a)(1)(A).
[55] 5 COLLIER ON BANKRUPTCY, ¶ 548.01 (Alan N. Resnick & Henry J. Sommer, eds, 15th ed. rev.).
[56] FED. R. CIV. P. 9(b); FED. R. BANKR. P. 7009.

generally."[57]   A claim alleging an actual fraudulent transfer under Section 548(a)(1)(A) must

satisfy the particularity requirement of Rule 9(b).[58]

36.     With regard to claims of fraud, the supplemental requirements of Rule 9(b) are

warranted by the "great harm to the reputation of a business firm or other enterprise" a fraud claim

can inflict.[59]  "[T]he heightened pleading standard provides defendants with fair notice of the

plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the

number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to

discover unknown wrongs."[60]

37.     To plead actual intent, parties often plead "badges of fraud" as circumstantial

evidence.[61] These badges include (1) whether the debtor retained possession or control of the

property after the transfer; (2) whether the transferee shared a familial or other close relationship

with the debtor; (3) whether the debtor received consideration for the transfer; (4) whether the

debtor disclosed the transfer; (5) whether the debtor had been sued or threatened with suit before

the transfer was made; (6) whether the transfer involved substantially all of the debtor's assets; (7)

whether the debtor absconded and (8) whether the debtor was or became solvent at the time of the

transfer.[62]   Importantly, "[a] single badge of fraud is insufficient to establish intent, but the

presence of several may create a presumption that the debtor acted with the requisite intent to

---

[57] *Id.*

[58] *See Juliet Homes*, 2011 Bankr. LEXIS 5116,  at *12 (quoting *E. Poultry Distribs., Inc. v. Yarto Puez*, 2001 U.S.
Dist. LEXIS 21356, 2001 WL 34664163, at *2 (N.D. Tex. 2001)); *see also, In re Verestar, Inc.*, 343 B.R. 444, 459
(Bankr. S.D.N.Y. 2006).

[59] *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

[60] *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

[61] 5 COLLIER ON BANKRUPTCY ¶548.04[2][b].

[62] *See, e.g., Soza v. Hill (In re Soza),* 542 F.3d 1060, 1067 (5th Cir. 2008) (summarizing the application of the "badges
of fraud" analysis in Texas).

defraud."[63]   In addition, heightened pleading standards require more than a recitation of the elements of a claim or an attenuated fact that is not material to the alleged transfers.[64]

38.     Count 2 of the Complaint merely recites the elements of a fraudulent transfer under Section 548(a)(1)(A).  Although the Complaint alleges wrongdoing on the part of the principals of the debtors, nowhere in the Complaint does Reagor Dykes describe actual intent.  Reagor Dykes tries a sleight-of-hand trick with its allegations.  On the one hand, it attempts to distinguish that the fraud was committed by Shane Smith, not by Reagor Dykes, presumably to avoid the showing that Reagor Dykes did anything wrong.  Yet, on the other hand, in order to state a claim under Section 548(a)(1)(A) it must show that the various Reagor Dykes entities made the alleged transfers with the intent to hinder, delay, or defraud its creditors.  There is no better explanation of this dilemma than the allegations contained in paragraph 95 of the Complaint, which conclusively provide:

> Each such transfer was made with the intent to hinder, delay, or defraud creditors of the FCB Account Debtor Debtor [*sic*] because the transfer was made in connection with and in furtherance of ***Smith's*** fraudulent scheme. (emphasis added)

Here, the Complaint alleges that it was "Smith's fraudulent scheme," yet Smith is not a plaintiff in this adversary proceeding or the alleged transferor of any of the alleged transfers.  There are no facts that the complained of transfers were made by a Reagor Dykes entity with the requisite intent.

39.     In addition, "[t]o suggest that a fraudster's mere use of a bank or financial institution as an intermediary to accomplish the fraud means that each transaction with the intermediary that is also tainted with fraudulent intent is to make the bank or other financial intermediary a target for the debtor's creditors, even where the bank or other financial

---

[63] *Paradigm Air Carriers, Inc. v. Tex. Rangers Baseball Partners (In re Tex. Rangers Baseball Partners)*, 498 B.R. 679, 712 n.151 (Bankr. N.D. Tex. 2013); *Brandt v. PlainsCapital Leasing, LLC (In re Equip. Acquisition Res., Inc.)*, 483 B.R. 823 (Bankr. N.D. Ill. 2012).
[64] *Iqbal*, 556 U.S. at 678.

intermediary has no knowledge of the fraud."[65]   Without a particularized showing of the circumstances constituting actual fraud, the court must find that the allegations in the Complaint fail to satisfy the pleading requirements of Rule 9(b).  The Complaint does not contain sufficient allegations that, if proven, would plausibly support the conclusion that the Debtors deposited their own funds into their own unrestricted bank accounts or satisfied their own overdrafts with the intent to hinder, delay, or defraud creditors, as required by the relevant statutes.[66]

40.    In applying Rule 9(b), the Bankruptcy Court for the Northern District of Texas stated that "a plaintiff must state the 'who, what, when, and where' of the alleged fraud."[67]  The Bankruptcy Court found that the complaint failed to, "allege any facts as to exactly how the fraud was committed."[68]  The court also found that the complaint was, "too vague and meaningless to provide the defendants with any useful information in defending against King's claims."[69]  The court importantly noted that the Fifth Circuit has routinely held that a relator cannot merely allege fraudulent "schemes,"[70]  which is precisely what Reagor Dykes attempts to do here by merely identifying a check kiting scheme without particulars or any relation to specific transfers.  The existence of a check kiting scheme and the fact that the principal pled guilty is not *prime facie* evidence of intent to defraud a debtor's creditors.[71]  There must be actual intent for each alleged "transfer" to FirstCapital.[72]

---

[65] *Furr v. TD Bank, N.A. (In re Rollaguard Sec., LLC)*, 591 B.R. 895, 919-20 (Bankr. S.D. Fla. 2018) (dismissing all fraudulent transfer claims against debtors' financial institution).
[66] *Id.*
[67] *United States ex rel. King v. Alcon Labs*., 232 F.R.D. 568, 572 (N.D. Tex. 2005*)* (citing *Uni*Quality, Inc. v. Infotronx, Inc*., 974 F.2d 918, 923-24 (7th Cir. 1992) (dismissing claim because plaintiff "[did] not even hint at the identity of those who made the misrepresentations, the time the misrepresentations were made, or the places at which the misrepresentations were made")).
[68] *Id*.
[69] *Id*.
[70] *Id.*
[71] *Barber v. Union Nat'l Bank (In re KZK Livestock)*, 190 B.R. 626, 630 (Bankr. C.D. Ill. 1996) ("While the kite was going on, KNOWLES did have the 'intent to defraud a creditor' but there is no showing that he made the challenged payments to Union with the intent to defraud the Banks or any other creditor.").
[72] *Id.*

41.    No badges of fraud or material facts are pled, nor can they be, because FirstCapital was never a transferee of any funds.  Because Reagor Dykes' allegations are bereft of factual allegations of fraud that tie directly into specifically alleged fraudulent transfers, the fraudulent transfer claims asserted in Count 2 must be dismissed.

## C.   Because the Preferential and Fraudulent Transfer Claims Must be Dismissed, there is no Basis for Recovery under Section 550 (Count 3) or Section 502 (Count 5).

42.    Count 3 of the Complaint seeks the recovery of avoided transfers under Section 550(a)(1) of the Bankruptcy Code. Section 550(a)(1) provides: ". . . to the extent that a transfer is avoided under section . . 547 [and] 548 of this title, the trustee may recover . . . the value of such property, from—(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made . . ."[73]  A Section 550(a) claim, however, requires that the plaintiff plead a valid claim to recover estate assets.  As discussed above, FirstCapital was not a transferee of any funds and was only a mere conduit. Because Reagor Dykes failed to plead a viable claim under either Section 547 or under Section 548, Reagor Dykes cannot recover under Section 550(a)(1).

43.    Similarly, Count 5 of the Complaint seeks to disallow, under Section 502(d), any claims that FirstCapital may have against the Reagor Dykes bankruptcy estate to recover the amounts due and owing to FirstCapital.  A Section 502(d) disallowance claim, however, requires that Reagor Dykes plead a valid claim to recover estate assets.  Because Reagor Dykes has not pled viable preference or fraudulent transfer claims, it additionally failed to meet the pleading requirements for a section 502(d) claim.[74] As such, Count 5 should be dismissed.

## D.   Equitable Subordination Claim (Count 4) Must be Dismissed.

### 1.   Equitable Subordination Fails for Lack of Subject Matter Jurisdiction.

---

[73] 11 U.S.C. § 550(a)(1).
[74] *See Peterson v. Ritchie Capital Mgmt., LLC (In re Lancelot Investors Fund L.P.),* 2012 Bankr. LEXIS 1007, *25-26 (Bankr. N.D. Ill. Mar. 2, 2012) ("Because the Court finds that Trustee has not sufficiently plead a claim under Counts I – III of the Complaint, Count IV [under Section 502(d) of the Bankruptcy Code] is also dismissed . . . ").

44.     Through Count 4, Reagor Dykes seeks to subordinate FirstCapital's claims in the bankruptcy for its alleged inequitable conduct as provided for in Section 510 and Section 105.  The fundamental aim of equitable subordination is, "to undo or offset any inequality in the claimed position of a *creditor* that will produce injustice or unfairness to other creditors in terms of the bankruptcy results."[75]  Thus, the proper party to seek equitable subordination is the creditor or the trustee acting as representative of the creditor, not the debtor.[76]

45.     While courts diverge as to who has standing to assert equitable subordination claims,[77] the courts all agree that a creditor asserting equitable subordination must have suffered some particularized injury to satisfy the standing requirement.[78]  The problem is that Reagor Dykes is not a creditor, it is the debtor and lacks standing to assert an equitable subordination claim.[79]

46.     Because Reagor Dykes has no standing to bring an equitable subordination claim, the Court lacks subject matter jurisdiction and Count 4 must be dismissed.

---

[75] *Weeks v. Kinslow (In re Weeks),* 28 B.R. 958, 960 (Bankr. W.D. Okla. 1983) (denying Chapter 11 debtors' standing to raise equitable subordination doctrine) (emphasis in original).

[76] *In re Lockwood,* 14 Bankr. 374, 381 (Bankr. E.D. N.Y. 1981).

[77] *See AppliedTheory Corp. v. Halifax Fund, L.P. (In re AppliedTheory Corp.),* 493 F.3d 82, 85–86 (2d Cir. 2007) (announcing that an unsecured creditors' committee may bring an equitable subordination claim only after it receives leave of court and the trustee/debtor-in-possession unjustifiably refuses to pursue the claim); *In re Vitreous Steel Prods. Co.,* 911 F.2d 1223, 1231 (7th Cir. 1990) (deciding that an unsecured creditor had standing to seek equitable subordination under § 510(c) stating "individual creditors have an interest in subordination separate and apart from the interests of the estate as a whole. The individual creditor should have an opportunity to pursue its separate interest."); *Official Comm. Of Unsecured Creditors of Grand Eagle Cos. v. ASEA Brown Boveri, Inc.,* 313 B.R. 219, 228–29 (N.D. Ohio 2004) (concluding that a creditors' committee has direct standing to assert an equitable subordination claim); *Elway Co. v. Miller (In re Elrod Holdings Corp.),* 392 B.R. 110, 115 (Bankr. D. Del. 2008) ("[T]he Court holds that a secured creditor has standing to seek the equitable subordination of another secured creditor's claim to the extent that it seeks relief for a particularized injury, which differs from the injury incurred by all creditors."); *Weeks,* 28 B.R. at 960 (holding that only a creditor, or trustee acting on behalf of a creditor, not the debtor, has standing to pursue an equitable subordination claim).

[78] *Lone Star Bank of W. Tex. v. Rabo Agrifinance, LLC (In re Waggoner Cattle, LLC),* Nos. 18-20126-RLJ-11, 18-02007, 2019 Bankr. LEXIS 339, at *19 (Bankr. N.D. Tex. 2019); *see also,* Collier on Bankruptcy ¶ 510.05[1] (Richard Levin & Henry J. Sommer eds., 16th ed.).

[79] *Weeks,* 28 B.R. at 960 (holding that only a creditor, or trustee acting on behalf of a creditor, not the debtor, has standing to pursue an equitable subordination claim).

## 2.   Regardless, Reagor Dykes Failed to Plead Equitable Subordination Sufficiently.

47.     Equitable subordination is an unusual remedy that should be applied only in limited circumstances.[80]   Moreover, the doctrine is remedial, not penal, and should be applied only to the extent necessary to offset the specific harm that the creditors suffered on account of the inequitable conduct.[81]

48.     The Fifth Circuit has enunciated a three-prong test for equitable subordination: (1) the claimant must have engaged in some type of inequitable conduct; (2) the misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant; and (3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code.[82]   In order to justify equitable subordination, the bankruptcy court is required to make specific findings and conclusions with respect to each of the requirements.[83]   Equitable subordination will only be applied where the inequitable conduct of the claimants resulted in an injury to the other creditors or conferred an unfair advantage on the claimant against whom subordination is sought.[84]   Reagor Dykes failed to adequately plead any of the requisite elements showing inequitable conduct or unfair advantage on behalf of FirstCapital.[85]   Accordingly, the Court should dismiss Count 4.

---

[80] *In re Fabricators, Inc.*, 926 F.2d 1458, 1464 (5th Cir. 1991); *Holt v. Federal Deposit Insurance Corp. (In re CTS Truss, Inc.)*, 868 F.2d 146, 148-49 (5th Cir. 1989).
[81] *Trone v. Smith (In re Westgate-California Corp.)*, 642 F.2d 1174, 1178 (9th Cir. 1981); *Benjamin v. Diamond (In re Mobile Steel Co.),* 563 F.2d 692, 701 (5th Cir. 1977).
[82] *Fabricators*, 926 F.2d at 1464-65.
[83] *Id*.
[84] *In re Herby's Foods*, 134 B.R. 207, 212 (Bankr. N.D. Tex. 1991).
[85] *Brickley v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815, 840 (W.D. Tex. 2017).

### 3.    Equitable Subordination Claim is also Precluded by the *In Pari Delicto* Doctrine.

49.    Further, under the doctrine *in pari delicto*, when a party cannot show a complete cause of action without being obliged to prove their own illegal act, that party should be barred from recovery on that claim.[86]  Because Reagor Dykes' equitable subordination claim will rely in no small part on Reagor Dykes' directors, officers, and employees substantial fraud and other wrongdoing on behalf of Reagor Dykes, Count 4 should be dismissed.  The Complaint admits that officers of the various Reagor Dykes entities manipulated bank accounts and ran a "massive fraudulent scheme" by cross-transferring money between Reagor Dykes' controlled accounts, incorrectly reflecting debits and credits.[87]

50.    No less than fourteen Reagor Dykes employees and officers have pled guilty in federal district court to defrauding its creditors, including FirstCapital. [88]  Shane Smith's factual resume in his criminal proceeding states that "RDAG was under-capitalized due to its aggressive growth and acquisition of new dealerships, above-market employee compensation, and unnecessary overhead. As a result, RDAG did not have the necessary capital to make those large payments to FMCC after floor plan audits.  To compensate, RDAG kited intercompany checks to falsely inflate its account balances. . . ."[89]  The factual resume also describes the "floor plan fraud" where Smith and his "co-conspirators" "engaged in wire fraud by submitting false information to

---

[86] *See Rodriquez v. Love*, 860 S.W.2d 541, 544 (Tex. App.—El Paso 1993, no writ).

[87] *See* Doc. No. 1725, ¶23.

[88] FirstCapital requests the court take judicial notice of the factual resumes accompanying the guilty pleas of fourteen Reagor Dykes employees, pursuant to Federal Rule of Evidence 201(b)(2). In *Parker v. Mendoza*, the Northern District of Texas took "judicial notice of the records of the Dallas division of this the Northern District of Texas in *United States v. Evans*, No.3:05-CR-113-L, and in particular the factual resume" in evaluating a motion to dismiss under 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2)(B), wherein the plaintiff brought suit alleging constitutional rights violations related to his arrest and the seizure of drug evidence and the use against him in pending cases in the Northern District. No. 4:05-CV-759-Y, 2006 U.S. Dist. LEXIS 82835, *5 & 6, n.9. (N.D. Tex. Nov. 14, 2006); *see also Ratcliff v. Rainwater*, 93 Fed. Appx. 623, 625 (5th Cir. 2004).

[89] *United States v. Shane Andrew Smith*, No. 2:19-cr-00079-D, [Doc. 11, ¶24]. (N.D. Tex.) (Fitzwater).

Ford Motor Credit Company in connection with its floor plan loans."[90]  The factual resume does

not implicate any FirstCapital employee in the scheme, rather it notes that "RDAG had an entire

team at its headquarters designated to kite checks."[91]  The subsequent thirteen related criminal

proceedings further support the notion that Reagor Dykes employees were the only ones

responsible for perpetrating the fraud on behalf of Reagor Dykes.[92]

       51.      But, even relying on the four corners of the Complaint, the factual background

shows Reagor Dykes is the only party with factual support for inequitable conduct.  Therefore,

Reagor Dykes' claim for equitable subordination should be dismissed.[93]

### E.      Willful Violation of Automatic Stay Claim (Count 6) Must be Dismissed.

---

[90] *Id.* at ¶ 7.

[91] *Id.* at ¶ 24.

[92] *United States v. Lindsay Clare Williams*, No. 2:19-cr-118-Z, [Doc. 7, ¶11] (N.D. Tex.) (Kacsmaryk) ("For example, on March 24, 2017, Williams emailed [co-conspirators] the following instructions to the Amarillo location: 'Good morning! Shane wanted me to email you to ask if you could please cut about $320k in checks to RDAC and $320 to RDT and send them with a runner early this morning. We will be depositing checks for Amarillo today to offset. . .'"); *United States v. Sherri Lynn Wood*, No. 2:19-cr-130-Z, [Doc. 8, ¶12] (N.D. Tex.)(Kacsmaryk). ("The *RDAG controllers and office managers, including Wood, with the help of their office staff*, would prepare for floor plan audits by creating false paperwork, sometimes referred to as 'dummy shucks,' on vehicles that were sold out of trust, in order to make it appear as though the vehicles had just recently sold and were not out of trust." (emphasis added)); *United States v. Pepper Laray Rickman*, No. 2:19-cr-150-Z, [Doc. 4, ¶13] (N.D. Tex.)(Kacsmaryk). (". . .[T]he RDAG controllers or office managers, including Rickman, would provide the aforementioned false paperwork. . .to the auditors"); *United States v. Brad William Fansler*, No. 2:19-cr-159-Z, [Doc. 6, ¶11, 17] (N.D. Tex.) Kacsmaryk) (RDAG's accounting staff would submit false information by interstate wire communication to FMCC in order to acquire new floor plan funding. . . . FBI agents recovered several emails showing Fansler and his co-conspirators discussed fake flooring."); *United States v. Ashley Nicole Dunn*, No. 2:19-cr-170-Z, [Doc. 5, ¶¶5, 8] (N.D. Tex.) (Kacsmaryk) ("Prior to the collapse, Dunn spent the majority of her time processing kited checks. . . Dunn and co-conspirators made up random amounts for each check to total the amount provided by Smith."); *United States v. Whitney Erin Maldonado*, No. 2:19-cr-175-Z, [Doc. 6] (N.D. Tex.) (Kacsmaryk) (office manager at Reagor-Dykes Imports LP); *United States v. Elaina Marie Cabral*, No. 2:19-cr-149-Z, [Doc. 5, ¶3] (N.D. Tex) (Kacsmaryk) (Plainview Toyota store office manager); *United States v. Mistry Canady*, No. 2:19-cr-187-Z, [Doc. 7, ¶3] (N.D. Tex.) (Kacsmaryk) (office manager Spike Dykes Ford in Lamesa); *United States v. Diana Herrera Urias*, No. 2:19-cr-115-Z, [Doc. 8, ¶2] (N.D. Tex.) (Kacsmaryk) (Reagor Auto Mall Ltd. office manager); *United States v. Sheila Evans Miller*, No. 2:19-cr-116-Z, [Doc. 6, ¶8] (N.D. Tex.) (Kacsmaryk)) ("Miller, as controller, supervised the office manager at RAM."); *United States v. Paige Anna Johnston*, No. 2:19-cr-126-Z, [Doc. 4, ¶3] (N.D. Tex.) (Kacsmaryk) (Floydada store office manager);."); *United States v. Wesley Todd Neel*, No. 2:20-cr-00012-BR, [Doc. 7, ¶3] (N.D. Tex.) (Kacsmaryk) (safety and compliance manager).

[93] *Milligan v. Salamone (In re Westech Capital Corp.)*, Nos. 16-10300-TMD, 16-01078-TMD, 2018 Bankr. LEXIS 969, at *28 (Bankr. W.D. Tex. 2018) (dismissing a claim for equitable subordination for failure to adequately plead inequitable conduct).

52.     By Count 6, Reagor Dykes asserts that FirstCapital violated the automatic stay by freezing accounts and not releasing funds to the estate.   Count 6 of the Complaint should be dismissed because an administrative freeze on debtor accounts does not constitute a violation of the automatic stay as a matter of law.[94]   Under Section 362(a)(3) and (6), a bankruptcy filing automatically stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate,"" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."[95]   A bank account "consists of nothing more or less than a promise to pay, from the bank to the depositor" and "[a bank's] temporary refusal to pay was neither a taking of possession of respondent's property nor an exercising of control over it, but merely a refusal to perform its promise."[96]   Accordingly, Reagor Dykes' claim that FirstCapital "has failed and refused, and continues to fail and refuse, to transfer the Post-Petition Deposits to Plaintiffs' DIP Accounts is, "neither a taking of possession of Debtor[s'] property nor an exercising control over it, but merely a refusal to perform its promise."[97]

53.     Because Plaintiff's claims in Count 6 fail as a matter of law, Count 6 of the Complaint should be dismissed.

**F.      No Basis Exists for the Recovery of Attorney's Fees (Count 7) and it Must be Dismissed.**

54.     Through Count 7, Reagor Dykes seeks the recovery of attorney's fees, but they plead no basis for the recovery of attorney's fees.   That is because there is no basis.

---

[94] *Citizens Bank v. Strumpf*, 516 U.S. 16, 21 (1995).
[95] 11 U.S.C. § 362(a)(6).
[96] *Strumpf*, 516 U.S. at 21.
[97] *Id.*

55.     Even if there were a basis, it would be dependent on the success of their claims.[98]

As discussed above, none of Reagor Dykes' claims can survive this motion to dismiss, so there

can be no recovery of attorney's fees.

### III.   CONCLUSION

56.     For the foregoing reasons, the Complaint against FirstCapital should be dismissed

with prejudice.

> Respectfully submitted,
>
> Joel Hogue, SBN 09809720
> Joel.hogue@sprouselaw.com
> John Massouh, SBN 24026866
> John.massouh@sprouselaw.com
> SPROUSE SHRADER SMITH PLLC
> 701 S. Taylor, Suite 500
> P.O. Box 15008
> Amarillo, Texas  79105-5008
> (806) 468-3300; (806) 373-3454 FAX
>
> */s/ John Massouh*
> John Massouh
>
> *Attorneys for Defendant FirstCapital Bank of Texas,
> N.A.*

---

[98] *Reed v. CareCentric Nat'l, LLC (In re Soporex, Inc.)*, 446 B.R. 750, 789 (Bankr. N.D. Tex. 2011) (dismissing Trustee's Complaint to the extent it asserts entitlement to attorney's fees); *Herkner v. Argo-Tech Corp. Costa Mesa*, No. H-06-2491, 2008 U.S. Dist. LEXIS 55164, 2008 WL 2838115 at *1 (S.D. Tex. July 21, 2008) ("The award of attorney's fees is governed by the law of the state whose substantive law is applied to the underlying claims") (*quoting Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 230 (5th Cir. 2005)).

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served on **March 23, 2020** upon all parties entitled to such notice as provided by the ECF filing system.

*/s/ John Massouh*
John Massouh